[Cite as *In re K.Y. F.-H.*, 2024-Ohio-5797.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: KY. F.-H.
     KA. F.-H.

C.A. Nos.     31108
                  31109

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 22 11 0951
              DN 22 11 0952

DECISION AND JOURNAL ENTRY

Dated: December 11, 2024

STEVENSON, Presiding Judge.

{¶1} Appellant, a paternal aunt and the former legal custodian of the children in this case ("Aunt"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated its prior order of legal custody, removed Aunt as a party in this case, and placed the children in the legal custody of Aunt's son, the children's cousin ("Cousin"), and his girlfriend, M.B. This Court reverses and remands the judgment, solely insofar as the trial court failed to explicitly rule on Aunt's request for ongoing visitation, which was not opposed by any of the parties.

I.

{¶2} The children in this legal custody appeal are two girls, both with the initials K.F.-H, who were born March 20, 2012, and March 21, 2014. The children's parents have not appealed from the trial court's judgment.

{¶3}     During separate cases in 2014, the Summit County Juvenile Court removed these children from the custody of their parents because of substance abuse and other problems in the home. The court adjudicated the children dependent and entered dispositional orders of temporary custody to CSB. While in CSB's temporary custody, the children resided in the home of Aunt. During the following year, the parents did not make significant progress on the reunification goals of the case plan, so the juvenile court placed the children in the legal custody of Aunt. The children lived in Aunt's legal custody for the next 7 years.

{¶4}     During July 2022, CSB received a referral that Aunt was suffering from mental health problems that prevented her from safely caring for the children. Aunt had been involuntarily admitted to a psychiatric hospital ward because she had expressed suicidal ideation. Aunt was diagnosed with multiple mental health disorders and engaged in psychiatric treatment, but did not consistently take her prescribed psychiatric medications. CSB later filed complaints, alleging that these children were dependent because of Aunt's unstable mental health and her inability to provide them with a stable home. By agreement of the parties, the juvenile court later adjudicated the children dependent and placed them in the temporary custody of CSB.

{¶5}     Because the children had lived with Aunt for most of their lives, and had minimal involvement with their biological parents, they viewed Aunt as their primary parent figure and typically referred to her as Mom. During the trial court proceedings, the children's biological father ("Father") visited the children and began to establish a relationship with them. The children's biological mother, however, did not visit the children, participate in any case plan services, or attend hearings in the trial court.

{¶6}     Consequently, the case plan and CSB's reunification efforts focused on reuniting the children with either Aunt or Father. During the following year, the children visited and

maintained a close bond with Aunt, but Aunt continued to struggle with her unstable mental health. Aunt's contact with the children was limited to closely supervised visits. Father began to establish a relationship with the children, but they were not yet comfortable with him, and he did not resolve all his problems identified on the case plan.

{¶7} While Aunt and Father worked on the case plan, the children resided in the home of Cousin and M.B. They first lived in Athens, Ohio, and later relocated to Reynoldsburg. Because the children were doing well in Cousin's home and Cousin and M.B. agreed to provide them with a permanent home, CSB eventually moved for the children to be placed in the legal custody of Cousin and M.B.

{¶8} Although Aunt had previously requested legal custody of the children, she withdrew that motion because she was not prepared to have them return to her care. Aunt alternatively requested a six-month extension of temporary custody. Father also requested legal custody or a six-month extension of temporary custody. Mother did not file a dispositional motion, and did not appear at the dispositional hearing.

{¶9} The matter proceeded to a final dispositional hearing before a magistrate. At the hearing, Aunt also requested an order for ongoing visitation with the children who had lived with her for most of their lives. Aunt's trial counsel clarified that, "if the case is closed with custody to [Cousin and M.B.], [Aunt] would want a visitation order in place[.]" None of the witnesses at the hearing expressed any opposition to Aunt having visitation with the children, if the trial court placed them in the legal custody of Cousin and M.B. In fact, the caseworker, Cousin, M.B., and the guardian ad litem each testified about what type of visitation schedule with Aunt would be best for the children. All parties expressed their agreement that Aunt, as the children's long-time parent figure, should continue to have visitation.

{¶10} It is also significant to emphasize that, because the children's biological mother had almost no involvement in the trial court proceedings, she was not a focus of the final hearing. Numerous times during the final hearing, witnesses, attorneys, and the magistrate referred to mom or mother when it appears that they were, in fact, referring to Aunt. At times, the mistaken references were clarified, but this Court was unable to discern from some of the testimony whether the word mom or mother referred to Aunt, the biological mother, or both.

{¶11} Following the hearing, the magistrate placed the children in the legal custody of Cousin and M.B., and denied "[a]ll other motions[.]" The decision further set forth detailed visitation rights for Father, and granted "Mother" visitation at the discretion of Cousin and M.B., even though no one had requested or recommended that the biological mother be granted visitation. The decision did not explicitly address whether, and to what extent, Aunt retained rights to visit the children. The magistrate dismissed Aunt as a party to the proceedings but also stated that "[a]ll prior orders not inconsistent herein shall remain in full force and effect." The trial court adopted that decision the same day, with virtually identical language, which also did not explicitly grant or deny ongoing visitation rights to Aunt.

{¶12} Father and Aunt timely objected to the magistrate's decision. The trial court later overruled the objections and placed the children in the legal custody of Cousin and M.B. The trial court's final judgment also dismissed Aunt as a party, but it did not address Aunt's objections to the propriety of that dismissal, and again stated that "all prior orders not inconsistent herein shall remain in full force and effect." The final judgment did not clarify whether Aunt retained the right to visit the children or explain why Aunt was dismissed as a party. Aunt appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE COURT COMMITTED PLAIN, REVERSIBLE ERROR TO THE DETRIMENT OF [AUNT] WHEN IT ADDRESSED SOME OF THE ISSUES BEFORE THE COURT WITHOUT RESTATING PREVIOUSLY UNINCORPORATED, INTERLOCUTORY ORDERS.

{¶13}  Aunt's assignment of error challenges the trial court's judgment insofar as it fails to clarify whether she retains a right to ongoing visitation with the children.  As explained above, Aunt had requested ongoing visitation with the children; her request was supported by all parties; there was confusion during the hearing by repeated references to Aunt as Mother and/or Mom; and the trial court's judgment is unclear as to whether Aunt retained any rights to visit the children.

{¶14}  CSB asserts on appeal that Aunt did not preserve this issue for appellate review because she did not object to "the magistrate's decision terminating her party status, thereby terminating her visitation with the children[.]"  This Court disagrees.  The record reveals that Aunt did, in fact, submit a timely written objection to the magistrate's decision, which specified error insofar as the magistrate denied her motion for a six-month extension, terminated the prior order granting her custody of the children, and "deem[ed] her no longer a party to this action."

{¶15}  Aunt has persuasively asserted that it is unclear from the magistrate's decision, the trial court's judgment initially adopting it, and the trial court's final judgment after ruling on the objections, why Aunt was dismissed as a party to this action and whether she retained any legal right to visit the children.  At the commencement of the hearing, Aunt had explicitly requested ongoing visitation with the children, even if the court placed them in the legal custody of Cousin and M.B. and closed the case.  Counsel for the guardian ad litem explained that the guardian supported the agency's request for legal custody to Cousin and M.B. "and that visitation be carved out for [Aunt] and Father."  No evidence was presented to oppose Aunt's request for ongoing

visitation and every witness testified about what they believed the parameters of that visitation should be.

{¶16} Cousin testified in detail about how he envisioned Aunt's visitation going forward, with reference to Aunt by her first name. Given the physical distance between the homes of Aunt and Cousin and the children's increasing involvement in extracurricular and social activities, he suggested that visits with Aunt be scheduled twice a month, rather than weekly. He further explained that he welcomed frequent phone calls and Facetime visits from Aunt and that he would be willing to consider other suggestions for ongoing contact between the children and Aunt.

{¶17} M.B. also testified that visitation with Aunt scheduled twice a month would work better with the children's schooling and other activities. She emphasized that the children like visiting Aunt very much, but that the current weekly visitation schedule had been tiring for the children and had required them to forego attending sleepovers and other weekend activities with their friends.

{¶18} The guardian ad litem also testified about ongoing visitation between the children and Aunt. She emphasized that Aunt should have the same amount of visitation time with the girls as Father. She emphasized that the children love Aunt, as "she's Mom to them. They want to see her, as well [as Father], and talk with her." Although the testimony of the guardian ad litem referred to Aunt by her first name and by calling her mom or mother, it appears from her testimony that she was referring to Aunt and not the biological mother.

{¶19} The magistrate also specifically questioned the guardian ad litem about ongoing visitation between Aunt and the children, including asking why Aunt's visitation with the children should continue to be supervised. When he asked the guardian ad litem whether there should be some "baseline order of visitation" for Aunt, the guardian ad litem responded, "Yes, absolutely."

**{¶20}** Given Aunt's oral motion and the evidence presented at the hearing, it would have been within the court's discretion to grant Aunt an order of visitation. Nevertheless, the trial court failed to articulate any ruling on Aunt's unopposed request for ongoing visitation with the children. Because the trial court should have explicitly granted Aunt ongoing visitation rights, or stated a reasonable justification for denying her request, Aunt's assignment of error is sustained.

## III.

**{¶21}** Aunt's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee, CSB.

_____
SCOT STEVENSON
FOR THE COURT

CARR, J.
CONCURS.

FLAGG LANZINGER, J.
DISSENTING.

**{¶22}** I respectfully dissent from the majority opinion because I would dismiss this appeal for lack of a final, appealable order based on the same reasoning enunciated in my prior dissents. *See*, *e.g*., *In re P.O*., 2024-Ohio-4472, ¶ 32-33 (9th Dist.); *In re T.M*., 2024-Ohio-2479, ¶ 27-32 (9th Dist.); *In re O.V.*, 2024-Ohio-2620, ¶ 36-39 (9th Dist.). As in these cited cases, after ruling on the objections filed by Father, the trial court did not reiterate its prior orders pertaining to his visitation rights.

**{¶23}** Moreover, in this case, as is emphasized by the majority opinion, it is unclear whether the trial court ruled on Aunt's unopposed request for visitation with the children. The trial court's interlocutory orders and final judgment state that "[a]ll prior orders not inconsistent herein shall remain in full force and effect." As Aunt asserts on appeal, it is unclear whether she retained her prior visitation rights, or the court extinguished those rights because it dismissed her as a party. This case highlights the need for all rights and residual rights of the parents and Aunt to be set forth in one final order. Accordingly, I dissent.

APPEARANCES:

ALEXANDRA HULL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

WESLEY P. BUCHANAN, Attorney at Law, for Appellee.

HOLLY FARAH, Guardian ad Litem.